Good morning, Your Honors. Harvey P. Sackett for John Hudnall. I expect to reserve two minutes for rebuttal. May it please the Court. The AOJ improperly failed to comply with agency policy and Ninth Circuit case law when she found that Hudnall's symptoms were inconsistent with the lack of treatment. Social Security Ruling 16-3P states that there may be reasons for a person does not receive treatment, particularly when they suffer from a mental impairment. Hudnall did not receive treatment for a period of time, and the record explains why he did not do so. First, he said he did not want others to know about his business, quote-unquote. He said that when he was in group therapy, he did not find it helpful. Insofar as taking prescribed medications, he was concerned about their side effects. And finally, he told his therapist that he did not find one-on-one treatment to be helpful. As such, he provided reasons why he did not receive treatment. In addition, Ninth Circuit case law states, as noted in our briefs from Nguyen, that if a person does not seek mental health treatment, that in and of itself should not be viewed critically. Let's, however, assume that the panel concludes that the gap in treatment is outcome determinative. Hudnall does not concede this. However, there is a period of time where he does meet the 12-month durational requirement. When he returned to treatment in May of 2020, he continued to receive treatment for at least 12 months. And the standard for disability is to show that the impairment has lasted or is expected to last for 12 months. At a minimum, the case requires remand to determine whether or not he met that 12-month durational requirement and was, in fact, disabled for the period from May 2020 to the present. What's your response to, I think it's, the class is the one he started seeing in 2020, correct? Didn't she call him a pathological liar? She did, Your Honor. So what are we to do with that? He was deemed to be a pathological liar for one reason only. He lied to his family that he was going to work for three years when he was, in fact, not. However, his therapist said that this was a manifestation of his underlying illness. He did not lie to curry favor with anyone. He did not lie to enhance his disability. The clinicians said that this was a form of self-preservation. Couldn't the inference also be that he started attending these sessions in May 2020, you know, he lacked treatment for those five years? No, Your Honor, and this is the reason why. He went back into therapy because he realized that his condition had gotten worse. He had told his wife that he had not been working, and he made the decision that he really did need help. But when did he apply for disability? He applied for disability in 2020. What month? I don't know that offhand, Your Honor. The gap in treatment doesn't just go to whether he actually had the symptoms, but also to the reliability of the doctor, doesn't it? Because when the doctor says he's had this condition for a long time, but the doctor hasn't seen him in years, doesn't that undermine the doctor's credibility? Not necessarily, Your Honor. This is the reason why. The diagnosis of his severe impairment, and specifically a major depressive disorder, that was the diagnosis made in 2015. They made the same diagnosis in 2020. So there was really no change. The diagnosis was present at day one, and it was present five years later. We don't know what went on in the interim, other than the fact that, again, the claimant didn't seek treatment. So some of the argument is that his condition prevented him from being able to concentrate, but the ALJ actually said, well, I can tell from the proceeding that you were able to sustain concentration for this period of time, that you actually can concentrate. What is your response to that? Several things, Your Honor. Number one, this is an example of the proverbial sit and squirm test. The ALJ did not see the claimant. This was done via telephone. But we don't know from the record how much the claimant had to pause. And even if he did partake in a 40-minute hearing, a 40-minute hearing obviously is not the same thing as sustaining work eight hours a day, five days a week. It was a short period of time. So I don't see how the two square with one another. Can I ask, you have to concede that the new regulations overrule our past precedent regarding non-medical evidence, correct? That's correct, Your Honor. Okay. And then could you go to the RFC Level 2 issue? Can you describe that and why that was an error? It was a non-issue, Your Honor, because the ALJ, despite questioning the lack of treatment, despite questioning his activities of daily living, despite questioning the presence of some normal medical status exams, still came to the conclusion that he suffered from a major depressive disorder, which was in fact severe. And then the ALJ proceeded to go through Step 3. She concluded that his impairment did not meet the listing under Paragraph 12. She went to Step 4 and concluded he could not return to his former work. And then she went to Step 5. That's where a question arises in my mind. The ALJ found that your client could perform short, simple, repetitive tasks. And I'm trying to figure out how that matches up or doesn't match up with Level 2 reasoning, in which a person has to carry out detailed but uninvolved instructions. And so I'm trying to figure out how the description of his capability meets up with the description of the instructions. It doesn't meet up, Your Honor, and for the same reasons. The ALJ said he could perform short tasks, simple tasks, repetitive tasks. But the key here is that she also said that he could not perform tasks which are detailed. By definition, reasoning Level 2 states that he can perform tasks that are complex and detailed. That's not my understanding, Your Honor. I think there was an and. There is an and there. So my question is slightly to the side of that. If a person has to carry out detailed but uninvolved instructions, is the task that results necessarily short and simple and repetitive? No, Your Honor. That's because I read the detailed and complex together, but the actual capability was short, simple, and repetitive. And she said not detailed. So my apologies. In terms of the definition relative to her finding. Right. So I mean, if she said he could perform complex and detailed tasks, why doesn't that precisely within Level 2, which requires, I forget the exact language, but detailed but uninvolved, detailed but with uninvolved instructions. That seems precisely what complex, detailed but not complex means. It's my understanding that she said he could not perform detailed tasks. Detailed and complex tasks. But it's something that requires you to carry out detailed but uninvolved instructions might not be repetitive and it might not be short.  And that's the issue that I'm concerned about. And if that were the case, Your Honor, then the Commissioner could not meet its burden at Step 5 because the requirements are greater than the residual functional capacity and the definition of R2 and her underlying finding at Step 5 insofar as is RFC. I'm out of time. I'm going to reserve my last minute. Thank you, Counsel. Good morning, Your Honors. I just want to check that you can hear me. Thank you. My name is Shea Bond and I represent the Commissioner of Social Security in this matter. I just wanted to address Judge Bumate's question about when the application was filed. It was March of 2020, which is when the claimant actually returned to receive or sought out treatment. This was also around the time that he was also seeking a letter that he could leave the country because of the coronavirus and wanted to move to Japan with his wife. So before that, there was this very lengthy gap in time for treatment. The only other time he went in to seek treatment was when he had a laceration on his hand and I think he had a colonoscopy. And then he had also, in 2016, had sought an excuse to get out of a deposition that appeared to be related to some of the financial shenanigans that had occurred at his job, which he was fired from because of that activity. The record in this case really has very little support for the extent of the limitations that the claimant alleged. The gap in treatment is one such factor, but we also had the mental status examination findings that the ALJ cited back in 2015 when the claimant was seeking the treatment. He had the hospitalization, but then dramatically improved. And then when he returned for treatment in 2020, those mental status examination findings were rather benign given, again, the allegations that the claimant had alleged. And there was a question about, well, what is also the relevance of the ALJ's observations at the hearing? We argue they are relevant. This isn't a sit and squirm test. The claimant had alleged that he could only concentrate for up to 15 minutes. Like, that was his max. But the hearing lasted for over 40 minutes and he was testifying from Japan at 2 in the morning. So the fact that he was able to, as ALJ said, answer these questions cogently and competently for that significant period of time, directly addressed one of the allegations that claimant had made, saying that he could not work. So that was also a relevant observation. We also have the allegation that, again, he can't socialize or go outside. And his daily activities show that he did go outside. He did leave his house where he said he was in complete isolation. That was also inconsistent with the findings during the mental status examinations that he could interact appropriately with staff when he was going in for his treatment. So the ALJ definitely addressed a variety of reasons based on the record for finding the claimant's statements not fully supported. Could you address the level 2 reasoning issue? Of course. So I think it's now been made clear that the ALJ's RFC finding was no complex and detailed task. So it's not just the detailed. But that's only the negative half. He said that he is capable of performing tasks that are short, simple, and repetitive. So you can either look at the negative, what he can't do, or what he can do. My question is about what he can do, short, simple, and repetitive. And so I just have a hard time squaring that with the level 2 reasoning. So with level 2 reasoning, it says apply common sense understanding to carry out detailed but uninvolved tasks or instructions. So I would say that, although you're talking about in the negative, the fact that the restriction is only no complex and detailed tasks, so he can do those uninvolved tasks. But what he can do is short, simple, and repetitive. So if you carry out detailed but uninvolved instructions, is that necessarily resulting in a task that is short? It may result in a task that is simple, but it may not result in short or repetitive. But I see nothing in the definition of reasoning level 2 that would, if someone was limited as the claimant, that he can't do these, this reasoning level 2. There's nothing in that description that would say that he can't do those jobs. And this is why we had a vocation.  It sounds like Judge Graver and I have slightly different concerns about this issue. I was wondering how simple comports with detailed. I mean, if something is detailed, which it sounds like level 2 allows, I'm not sure that that is simple. Well, I don't see that as being an obvious conflict. And if we're talking about what does an ALJ need to resolve, it would be an obvious or apparent conflict. So I don't see an obvious and apparent conflict when this is the only restriction that the claimant had was against detailed and complex tasks, but reasoning level 2 doesn't require that type of... Well, it's a little odd because the ALJ says it two ways. There's the negative, he can't do these things. But then when the ALJ says he can do these things, it seems to me that the list of what he can do, they don't overlap, there's, like, space in between them. And what he can do is a smaller set of things, it sounds like. Well, but, I mean, that's why we had a vocational expert testify. And so the vocational expert was identifying these jobs, did not see any reason to say that they had to explain it further. So, again, if we're talking about an obvious or apparent conflict, which is the type of conflict we would need for an ALJ to resolve this, I just don't see it in the definition. I don't see there being a conflict, an obvious one, about the ability to do these kind of simple, repetitive tasks in this definition of reasoning level. Given that there were these two articulations that don't seem exactly consistent, how do we know that the expert used the right half? Well, because the expert heard the questioning, heard the hypothetical question. I mean, that's why the vocational expert was there, was to hear, this is the limitation, are there jobs that this person can perform? So I don't see there... There's not a disconnect, say, between the hypothetical and the RFC, but I don't see those matched. So we have a vocational expert getting an accurate understanding of this claim and its limitations and saying, here are the jobs that are available to this person. No-one expressed any concern about that RFC formulation and the ability to do these jobs. Is there reason to think that these jobs are easier than the average level 2 jobs? I mean, is that what you're saying, that somehow level 2 has a range and these are at the bottom of the range or something? Well, I'm saying that there's no indication that any of these particular... Yeah, these particular jobs that the vocational expert identified, the VE felt that fit with the limitations that were presented. So I don't... And I'm looking at the definition of reasoning level 2 now, and I just... These are still unskilled jobs, and we have a vocational expert that said there was no problem with the claimant doing that, that there was no confusion on the vocational expert's understanding of the RFC as being, you know, two different sets of limitations or conflicting limitations. Like, there was just... The vocational expert didn't express any concern, didn't ask a follow-up question. The representative at the hearing didn't say, wait a second, I have confusion here about whether the claimant could perform these jobs with this particular RFC formulation. So there's just... I don't see any evidence that there is an actual conflict here, or apparent. What were the actual jobs that level 2 encompassed, according to the expert here? I'm sorry, could you repeat that? Which jobs were encompassed by level 2? I think it's assembler, packer, court, office court, paster. All of those jobs would have been correct. And those jobs, do they have long tasks? Do any of those jobs require long, detailed tasks? Um, in what, like, in what respect? Well, I mean, the LJ said that he could only do short, repetitive tasks. Do you know that any of these jobs, specific jobs, that were listed by the vocational auditor have long tasks? Well, if they had, I don't think the vocational expert would have identified them, right? I mean, that's where we're getting to, is that, again, we have a vocational expert who understood the question that was presented with both the restriction against complex and detailed tasks and then the capacity for the simple, repetitive ones. So looking at the descriptions of the four jobs, I mean, if his abilities require that the tasks be repetitive, looking at the definitions of them in the Dictionary of Occupational Titles, I think only two of them say repetitive. The other two don't. Well, I don't know if the actual... If you're talking about the capsule description of, like, what's going on with those jobs, I don't think you actually need to see the word repetitive in that description for the vocational expert, who has the expertise to understand how these jobs are done, to say that they can be done with a restriction to repetitive tasks. Am I understanding your argument correctly that we don't look to the dictionary definitions or even the Level 2 definition because we could rely just solely on the vocational expert's testimony because the vocational expert understood all the limitations and then offered these... Yeah, here, and again, we're talking about was there an obvious or an apparent conflict on that rec... at the hearing that would have triggered the ALJ to ask a follow-up question or to resolve any conflict? And we don't have that here, particularly when we have a qualified vocational expert who, again, heard the questioning, expressed no concern that there was some sort of conflict between these two parts of the RFC and said, here are the jobs the person can perform. Did Hanel raise a conflict? I don't remember them raising any kind of conflict at the hearing. I don't believe there was any questioning or follow-up on that. Um, if there are no further questions, we would ask that you affirm the ALJ's decision. Thank you. One critical point I'd like to address is Judge Vilmete's last question. Uh, we don't leave it up simply to the V.E. Uh, in rounds, the court said that we have to look to the reasoning levels. So we don't just defer to the V.E. Was there an objection, though? Did-did you argue that the expert, the vocational expert, had given an improper opinion? I did, Your Honor, and I... and this is spoken to at length. The ALJ went through all my objections in her decision. At the end of the day, she rejected them. Um... And you raised them at the district court as well? Yes, Your Honor, I did. I guess what's the... what's the problem here? I mean, this... the review is substantial evidence. If the vocational expert said that he can perform these after listening to all the evidence, how's that not substantial evidence? Because those jobs... again, we... we're getting back to the R2 question. Those jobs don't comport with the requirements under R2. And R2 was not really... was not discussed at all during the hearing. The ALJ simply said what she said in terms of the limitation, but it was never, um... it was never spelled out. There was no dialogue about what R2 really means. And as such, if I'm hearing the panel correct... correctly, forgive me for... for being presumptuous, there are too many unknowns about the vocational findings. I think because of the Step 5 question alone, the case requires reversal and remand. Thank you. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: GRABER, FRIEDLAND, BUMATAY